

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BARBARA MAY BLACKWELL,<br><br>*Defendant.* | CRIMINAL NO. 3:04cr00040<br><br>MEMORANDUM OPINION AND ORDER<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant's Rule 33 Motion for New Sentencing (docket entry no. 97) filed on December 10, 2007. Because I find that the Court lacks jurisdiction to consider Defendant's motion, whether under Federal Rules of Criminal Procedure 33 or 35 or 18 U.S.C. §§ 1651(a) or 2241, the motion must be DISMISSED.

## I. BACKGROUND

On September 23, 2005, Defendant pled guilty to two counts of wire fraud in violation of 18 U.S.C. § 1343. In preparation for sentencing, the U.S. Probation Office (USPO) prepared a Presentence Report, to which Defendant noted several objections. Foremost among these was an objection to the characterization of Mr. Beekman Beavers as a victim of Defendant's fraud and the resulting attribution of losses on his American Express account ("AmEx account") and Nova Corporation merchant account ("Nova account") to Defendant. Defendant also objected to the USPO's recommendation of a two-level enhancement for obstruction of justice based on Defendant's failure to disclose three prior civil judgments and to the recommendation that those judgments be counted as relevant conduct. The government objected to the recommendation of a three-level reduction for acceptance of responsibility.

Over these objections, the USPO grouped the two Counts and calculated a total offense level of 19 and a criminal history category of II, which resulted in a guideline range of 33–41 months imprisonment.[1] Consistent with the guideline provisions, the USPO recommended for each count a sentence of 36 months imprisonment followed by 3 years of supervised release, all to be served concurrently, as well restitution of $260,326.09, and a $200 special assessment.

The sentencing hearing lasted two days, and counsel for both parties argued their objections. In addition, both Defendant and Beavers, among others, testified. Defendant testified that she used Beavers's AmEx and Nova accounts with his knowledge and permission, that Beavers was fully aware of what she was using the accounts for, and that he was not victim of her fraud. Beavers acknowledged that he had given Defendant permission to use the Nova account and, on some occasions, to use the AmEx account. But Beavers also testified that he had not given permission for the AmEx charges that resulted in the $61,000 loss attributed to Defendant, and that he did not know that either account was being used for fraud. He further testified that he had to file for bankruptcy due, in large part, to losses on the AmEx and Nova accounts that were caused by Defendant's fraudulent activities.

On October 17, 2006, at the conclusion of the hearing, I found that the total offense level was 20. This adjustment to the USPO's recommendation was based on two principal findings. First, I found that the three civil judgments could not be counted as relevant conduct. Therefore, I reduced the amount of loss attributed to Defendant for purposes of the guideline calculation from $553,023.49 to $332,317.23. Under U.S.S.G. § 2F1.1(b)(1) (2000), this resulted in an eight-level increase rather than the recommended ten-level increase.

---

[1] In making its guideline calculations, the USPO used the 2000 edition of the U.S. Sentencing Commission Guidelines Manual.

Second, I found that Defendant had not accepted responsibility under U.S.S.G. § 3E1.1 (2000) and was therefore not entitled to the recommended three-level reduction. Among my stated grounds for denying Defendant credit for acceptance of responsibility was my disbelief of Defendant's testimony regarding Beavers's involvement in the fraud. For similar reasons, I adopted the USPO's recommendation of a two-level enhancement for obstruction of justice.

The total offense level of 20 and the criminal history category of II resulted in a guideline range of 37–46 months imprisonment. Finding that a sentence within the guidelines would be reasonable, I sentenced Defendant to two 42-month terms of imprisonment and two 3-year terms of supervised release, all to be served concurrently, as well as restitution of $252,243.55 and a $200 special assessment.

Defendant filed a Notice of Appeal on October 24, 2006 and self-reported to USP Hazelton on December 8, 2006. The U.S. Court of Appeals for the Fourth Circuit affirmed Defendant's sentence on November 16, 2007.

On December 10, 2007, Defendant filed the Rule 33 Motion for New Sentencing that is presently before the Court. A telephonic hearing was held on December 20th, at which time Defendant was given leave to file a supplemental memorandum addressing the Court's jurisdiction to hear Defendant's motion. Defendant filed two such memoranda by Counsel on January 16, 2008. She has also sent numerous pro se communications, which address a variety of legal and factual issues, directly to Chambers.[2]

In her Rule 33 Motion for New Sentencing, Defendant argues that a new sentence is warranted based upon newly discovered evidence that supports her testimony regarding

---

[2] These ex parte communications have all been forwarded to the Clerk, who has entered them in the docket. Although Defendant is not entitled to act pro se while simultaneously being represented by retained counsel, *cf. Martinez v. Ct. of App. of Ca.*, 528 U.S. 152, 163 (2000); *Frank M. McDermott, Ltd. v. Moretz*, 898 F.2d 418, 422 (4th Cir. 1990), I will nevertheless consider and address her pro se arguments to the extent that they are relevant to the jurisdictional issue.

Beavers's knowledge of and consent to her use of his accounts, and shows that Beavers committed perjury at the sentencing hearing.[3] This evidence consists of the sworn declaration of Mr. James V. Nespeco, who was Beavers's business partner during the period in which Beavers incurred the losses that were attributed to Defendant's fraud, and copies of several documents provided by Nespeco in support of his declaration. Defendant also offers copies of two communications from her trial counsel: (1) a letter to the Assistant United States Attorney (AUSA) making a *Brady* request for copies of documentation that Beavers testified he gave to the government, and (2) an email to Defendant stating that the AUSA "appears to have acknowledged that [Beavers's] testimony was inaccurate in place . . . ."[4] (Def.'s Mot., Exs. at

---

[3] Defendant also argues in several of her pro se documents that her sentence is illegal under *United States v. Booker*, 543 U.S. 220 (2005), because "Beaver's [*sic*] was not part of my guilty plea nor my indictment." (Def.'s Letter 1, Jan. 9, 2008.) As she explains further, "My acceptance was taken away for someone I did not plead guilty to. I never accepted guilt for Beavers and would not have signed a guilty plea with Beavers in it." (*Id.* at 2.) Although I need not decide this issue at present, a brief review of the case law suggests that Defendant's reliance on *Booker* is likely misplaced.

It is true that, consistent with *Blakely v. Washington*, 542 U.S. 196 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held in *Booker* that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 543 U.S. at 244. Had the *Booker* Court stopped there, Defendant's argument might be meritorious because judicial adherence to the sentencing guidelines was at that time mandatory, and the "maximum [sentence] authorized by the facts established by a plea of guilty" would have therefore been determined by the guideline ranges. The Court did not stop there, however, and instead went on to render the sentencing guidelines merely "advisory." *Id.* at 245–46. Accordingly, because judges are not *required* to adhere to the now-advisory guideline ranges, the "maximum [sentence] authorized by the facts established by a plea of guilty" is simply the applicable statutory maximum. *United States v. Hughes*, 401 F.3d 540, 546–47, 552–53 (4th Cir. 2005). Thus, a sentence does not violate the Sixth Amendment for being based in part on judge-found facts unless those facts result in a sentence that is above the statutory maximum, *id.*, which in Defendant's case is 20 years imprisonment per count, 18 U.S.C. § 1343.

[4] These communications from Defendant's trial counsel appear to be offered in support of the contention that her new evidence could not reasonably have been discovered in time to present it at the sentencing hearing:

> Beavers' testimony came on October 17, 2006, moments prior to this Court's announced sentence. Ms. Blackwell's trial counsel could not have reasonably anticipated that Beavers would lie on the witness stand . . . . Trial counsel's suspicion of withheld evidence from the government is supported by his correspondence with the Assistant United States Attorney and with Ms. Blackwell. Trial counsel had no independent evidence or way to know about other evidence in time to present it to the Court. As a result, this new evidence could not have reasonably been discovered by diligent effort of trial counsel.

(Def.'s Mot. 8.) Because I lack jurisdiction to consider the merits of Defendant's motion, I need not decide whether her new evidence could reasonably have been discovered in time to present it at the sentencing hearing. I will note, however, that it is unclear how a "suspicion of withheld evidence" would be relevant to that issue—as Nespeco

- 4 -

15.) Defendant argues that had this evidence been available and presented at sentencing, I would have believed Defendant's testimony rather than Beavers's, and that I would have therefore found that she had accepted responsibility, that she had not obstructed justice, and that Beavers was not a victim of the fraud.[5] Defendant asks for an evidentiary hearing "to get to the truth and evaluate whether adjustment to the imposed sentence is warranted." (Def.'s Mot. 8.)

## II. DISCUSSION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, before considering the merits of Defendant's motion, I must first determine whether the Court has jurisdiction to grant the relief she requests. Section 3582 of Title 18, United States Code, provides in pertinent part that "[t]he court may not modify a term of imprisonment once it has been imposed except that . . . the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." 18 U.S.C. § 3582(c), (1)(B). Therefore, jurisdiction to modify Defendant's term of imprisonment exists only when modification is "expressly permitted by

---

himself states: "The government, through the FBI or otherwise, never contacted me . . . ." (Nespeco Decl. ¶ 14.) Moreover, Defendant's testimony at sentencing makes clear that she has known all along that Nespeco was Beavers's business partner during the time in question and even gave Nespeco $4000 to help with his and Beavers's business. (*See* Tr. Barbara Blackwell Test. 8:12–9:10, July 26, 2006; Def.'s Letter 4, Nov. 27, 2006.)

[5] The unstated implication in Defendant's motion is that had I made such findings, I would have imposed a lesser sentence. In some of her pro se documents, Defendant makes this implication explicit and even suggests that the roughly 13 months imprisonment that she has already served would satisfy the applicable guideline range. However, even if Beavers's loss ($61,000 on the AmEx account and $48,000 on the Nova account) is subtracted from the total loss attributed to Defendant, it appears that the same eight-level increase would still apply because the total loss would still be greater than $200,000 but less than $350,000 ($332,317.23 - $61,000 - $48,000 = $223,317.93). U.S.S.G. § 2F1.1(b)(1) (2000). Thus, it would seem—though I do not purport to decide the issue at this time—that even with the acceptance of responsibility reduction and without the obstruction enhancement or Beavers's loss, the applicable guideline range would be 21–27 months, based on a total offense level of 15 and a criminal history category of II. If this is correct, then even if Defendant were to prevail on her claims, and I re-sentenced her to a term of imprisonment at the bottom of the applicable guideline range, she would not be released until early-June 2008 even with the 15% reduction from the Bureau of Prisons for good behavior.

statute or by Rule 35." § 3582(c)(1)(B). Defendant points to several statutes and rules, which she argues give the requisite express permission. I will address each of Defendant's arguments in turn.

*A. Rule 33*

On its face, Defendant's motion relies on Rule 33 of the Federal Rules of Criminal Procedure. Rule 33 is entitled "New Trial" and provides in pertinent part that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires. If the case was tried without a jury, the court may take additional testimony and enter a new judgment." Fed. R. Crim. P. 33(a). Even if I assume that Rule 33 falls within the "by statute or by Rule 35" language of § 3582(c)(1)(B), it is clear that Rule 33 does not confer jurisdiction to consider Defendant's claims. As interpreted by the overwhelming weight of authority, and "[b]y its express terms, Rule 33 is confined to those situations in which a trial has been had. . . . In fine, Rule 33 'applies only to cases in which a trial, either to the court or to a jury has taken place.'" *United States v. Graciani*, 61 F.3d 70, 78 (1st Cir. 1995) (citing *United States v. Collins*, 898 F.2d 103, 104 (9th Cir. 1989) (per curiam); *United States v. Lambert*, 603 F.2d 808, 809 (10th Cir. 1979); *United States v. Prince*, 533 F.3d 205, 208 (5th Cir. 1976); *Williams v. United States*, 290 F.2d 217, 218 (5th Cir. 1961) (per curiam)); *see also Caldwell v. United States*, 992 F. Supp. 363, 365–66 (S.D.N.Y. 1998) ("Rule [33] is inapplicable here since there was no trial in this case, as Caldwell pleaded guilty to the charges."); 26 James Wm. Moore, *Moore's Federal Practice* § 633.02[1] (3d ed. 1997) ("Rule 33 is only available where a trial occurred; the Rule does not make a new trial available to one who pled guilty.") Accordingly, because Defendant pled guilty, and thus there was no trial in her case, Rule 33 does not confer jurisdiction to modify Defendant's sentence.

## B. Rule 35

Defendant also argues that Rule 35 provides jurisdiction to hear her claims. (*See* Def.'s Letter 1, 4, 6, Jan. 9, 2008; Def.'s Letter 2, 5, Jan. 8, 2008; Def.'s Letter 3, Jan. 11, 2008.) However, Defendant's reliance on Rule 35 is misplaced. Rule 35(b) allows a sentence to be reduced upon motion by the government based on the defendant's substantial assistance. The government has made no such motion in Defendant's case. Rule 35(a) states that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." In Defendant's case, the specified seven-day time period expired well over a year ago. Accordingly, Rule 35 does not confer jurisdiction to modify Defendant's sentence.

## C. 28 U.S.C. §§ 1651(a), 2241

The final basis for jurisdiction asserted by Defendant is 28 U.S.C. §§ 1651(a) and 2241. Section 1651(a) provides that a court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." Section 2241 deals with writs of habeas corpus. Defendant seems to argue that I should construe her motion as a petition for a writ of error coram nobis, which would be issued under § 1651(a), but the substance of her arguments seems to be addressed more toward the habeas corpus requirements set forth in § 2241. Regardless, I lack jurisdiction to grant either a writ.

"Coram nobis relief is only available if the petitioner no longer satisfies the custody requirement for seeking relief under section 2241 or 2255." 28 Moore, *supra*, § 672.02[2][c] (citing cases); *see also In re Daniels*, 203 Fed. Appx. 442, 442 (4th Cir. 2006) (citing *Carlisle v. United States*, 517 U.S. 416, 429 (1996)); *United States v. Smith*, 77 Fed. Appx. 180, 180 (4th

Cir. 2003) (citing *United States v. Sawyer*, 239 F.3d 31, 37 (1st Cir. 2001)). Because Defendant is presently in federal custody, coram nobis relief is unavailable.

As for habeas corpus relief under § 2241, the Court lacks jurisdiction because a petition for habeas corpus must be brought, not in the sentencing district, but in the district of confinement. *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004) ("Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement."); *United States v. Little*, 392 F.3d 671, 680 (4th Cir. 2004) (same); *In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000) (citing 28 U.S.C. § 2241(a)). Accordingly, if Defendant wishes to petition for a writ of habeas corpus pursuant to § 2241, she must do so in the Northern District of West Virginia, in which USP Hazelton is located.[6]

### D. 28 U.S.C. § 2255

Ordinarily, a motion pursuant to 28 U.S.C. § 2255, not 28 U.S.C. § 2241, is the appropriate vehicle for challenging a conviction or the imposition of a sentence. *In re Jones*, 226 F.3d 328, 333 (4th Cir. 2000). Indeed, as the Eleventh Circuit has explained:

> The proviso [in Rule 35] that a court may modify a sentence when "expressly permitted by statute" refers to situations where the defendant is incarcerated pursuant to a "plainly illegal sentence." The drafters of the Federal

---

[6] Defendant should bear in mind, however, that relief under § 2241 is available only if a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence would be "inadequate or ineffective to test the legality of [her] detention." 28 U.S.C. § 2255(e).

> [B]y far the most common situation that satisfies this standard is a challenge to any governmental action involving the execution of the sentence. Thus, section 2241 is the appropriate vehicle for seeking relief with respect to such issues as ... the decisions of federal probation or parole authorities, and the conditions of a federal prisoner's confinement....
> In situations not related to the execution of the sentence, only in the rarest of circumstances have the courts found the section 2255 motion to be "inadequate or ineffective."

28 Moore, *supra*, § 672.02[2][b] (citations omitted). To the extent that Defendant's claims are an attack on the validity of the sentence itself and not the execution of the sentence, it would appear that § 2255 rather than § 2241 most likely provides the appropriate vehicle.

Rules of Criminal Procedure explicitly assumed "that a defendant detained pursuant to such a sentence could seek relief under 28 U.S.C. § 2255 if the seven day period provided in Rule 35(c) has elapsed."

*United States v. Diaz-Clark*, 292 F.3d 1310, 1316 (11th Cir. 2002) (quoting Fed. R. Crim. P. 35 advisory committee's notes). For reasons that are not entirely clear, Defendant has expressed reluctance to bring her claims in a § 2255 motion to vacate, set aside, or correct her sentence.[7] Nevertheless, I am aware of no other means by which this Court might have jurisdiction to consider them.

To be clear, I reserve decision on the merits of Defendant's claims until they are properly before the Court; to say that the Court might have jurisdiction to consider her claims if raised in a § 2255 motion is not to say that she would necessarily prevail on them.[8] Bearing that caveat in mind, Defendant may bring the claims raised in her Rule 33 motion, and any other claims that

---

[7] In one of her pro se documents, Defendant explains "the reasons we would use 2241 instead of 2255." (Def.'s Letter 2, Jan. 24, 2008.) In substance, however, these "reasons" appear to be two alleged constitutional errors in her sentence. One of the alleged errors is the *Booker* issue previously addressed. The other goes to Beavers's alleged perjury and argues that "a sentencing based o[n] false evidence is a violation of the 14th Amendment due process" (though the cases she cites in support appear to stand for the more limited proposition that the government's *knowing* use of perjured testimony violates due process, *see Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). (*Id.*) Regardless, neither alleged error appears to justify relief under § 2241 rather than § 2255.

Defendant concludes by stating that "[t]hese are the reasons we would use 2241 instead of 2255 which is against a judge, attorney or prosecutor and the purpose of my motion is to correct the above." (Def.'s Letter 2, Jan. 24, 2008.) Although it is true that claims of ineffective assistance of counsel or of judicial or prosecutorial misconduct are often raised in § 2255 motions, they are not the only cognizable claims. Moreover, a § 2255 motion is not "against a judge, attorney or prosecutor"; rather, the adverse party is the government.

[8] Indeed, it appears that Defendant's claims may have significant weaknesses. In addition to the previously discussed concerns regarding Defendant's *Booker* and due process arguments, there may well be questions of procedural default based on Defendant's failure to raise her claims in her direct appeal to the Fourth Circuit. Moreover, because the utility of Defendant's new evidence appears limited to impeaching Beavers's testimony, even a showing that the new evidence was unavailable at the time of Defendant's appeal may not be sufficient to overcome any default. *See, e.g., Lynn v. United States*, 365 F.3d 1225, 1237 (11th Cir. 2004) (stating that "§ 2255 motions based on new evidence are subject to the standards generally applicable to motions for a new trial based on new evidence," and that those standards require, among other things, that the new evidence "is not merely cumulative or impeaching"); *cf. United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993).

Again, I do not decide any of these issues at this time. Rather, I emphasize some of the potential weaknesses in Defendant's claims in an effort to make clear to Defendant that hers is not necessarily an "open and shut" case. The question of jurisdiction presently facing Defendant is likely only the first of many hurdles she will face, some of which may ultimately prove insurmountable.

might entitle her to relief,[9] in a timely and properly filed motion to vacate, set aside, or correct her sentence pursuant to § 2255.[10] If Defendant chooses to file such a motion, she may

---

[9] Defendant should be advised that once she has filed one § 2255 motion challenging her sentence, she must apply for certification from the Fourth Circuit in order to file a second or subsequent § 2255 motion as to the same sentence. 28 U.S.C. § 2255(h). Therefore, if Defendant chooses to file a § 2255 motion, she should include in the motion *all* grounds upon which she believes her sentence to be invalid or unconstitutional because a later § 2255 motion raising such grounds would be dismissed as successive unless Defendant first received certification from the Fourth Circuit.

[10] In its entirety, § 2255 states the following:

> (a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.
> (b) Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.
> (c) A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.
> (d) An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.
> (e) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.
> (f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
> > (1) the date on which the judgment of conviction becomes final;
> > (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> > (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> > (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
> (g) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.
> (h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

incorporate by reference her Rule 33 motion and its exhibits. For Defendant's convenience, the standard form for a motion under § 2255 is attached to this Order.

### III. CONCLUSION

For the above-stated reasons, I find that the Court lacks jurisdiction to consider Defendant's Rule 33 Motion for New Sentencing (docket entry no. 97). Accordingly, Defendant's motion is hereby DISMISSED.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record and to Defendant.

Entered this 4th day of February, 2008.

                                        NORMAN K. MOON
                                        UNITED STATES DISTRICT JUDGE

---

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
    (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255.

Case 3:04-cr-00040-NKM-mfu   Document 134   Filed 02/04/08   Page 11 of 11   Pageid#: 587